UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.   22-14065-CR-CANNON/MAYNARD

UNITED STATES OF AMERICA

v.

DION KHAN,

                              **Defendant.**
_____/

## UNITED STATES' MOTION FOR DOWNWARD DEPARTURE AND SENTENCING MEMORANDUM

The United States of America, by and through the undersigned Assistant United States Attorney, respectfully requests the Court to depart downward from the bottom of the defendant's advisory guideline range under Section 5K1.1 of the United States Sentencing Guidelines to reflect the defendant's substantial assistance to the United States.

### BACKGROUND

On October 20, 2022, a federal grand jury returned an Indictment charging Dion Khan ("Khan") with distribution of 5 grams or more of methamphetamine (actual), in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B)(viii) (Count One), and distribution of 50 grams or more of methamphetamine (actual), in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(viii) (Counts Two and Three).  (Doc. No. 1.)

On January 11, 2023, Khan pleaded guilty as charged to each count contained in the Indictment pursuant to a written plea agreement with the United States.  (Doc. Nos. 21-23, 25, 28.)  As part of the plea agreement, Khan agreed to cooperate with the United States.

1

Khan's sentencing hearing is scheduled for April 20, 2023. According to the Presentence Investigation Report ("PSI"), Khan has a Total Offense Level of 29 and criminal history category of III, which yields an advisory sentencing guideline range of 108 – 135 months' imprisonment. (PSI at ¶¶ 38, 44, 84.) Khan would ordinarily be subject to a mandatory minimum sentence of 10 years' imprisonment. Khan, however, is eligible for safety-valve relief. (PSI at ¶¶ 26, 83.) Thus, the Court may sentence Khan without regard to the otherwise applicable mandatory minimum.

As for the calculation of Khan's advisory guideline range, Section 2D1.1(b)(18) of the Guidelines provides that if "the defendant meets the criteria set forth" in Section 5C1.2(a)(1)-(5) of the Guidelines, "decrease by two levels." Because the most current version of the Guidelines incorporates only those amendments effective as of November 1, 2018, the criteria set forth in Section 5C1.2(a)(1)-(5) do not reflect the amendments made by the First Step Act, which was signed into law on December 21, 2018.[1] Accordingly, Section 5C1.2(a)(1) still states that a defendant is ineligible for safety-valve relief if he has more than one criminal history point, even though the First Step Act now provides that a defendant is eligible for safety-valve relief provided he does not have "(A) more than 4 criminal history points, excluding any criminal history points resulting from a 1-point offense, as determined under the sentencing guidelines; (B) a prior 3-point offense, as determined under the sentencing guidelines; and (C) a prior 2-point violent offense, as

---

[1] The First Step Act, Pub. L. No. 115-391, which was enacted in 2018, amended 18 U.S.C. § 3553(f)(1) by broadening the circumstances under which defendants may receive a sentence below the otherwise mandatory minimum sentence for certain drug crimes. Prior to the enactment of the First Step Act, a defendant was ineligible for safety-valve relief if he had more than 1 criminal history point.

determined under the sentencing guidelines[.]" 18 U.S.C. 3553(f)(1)(A-C). Khan does not have a prior 3-point offense or a prior 2-point violent offense.

In light of the foregoing, the United States requests the Court to grant a two-level downward variance from Khan's total offense level to reflect the two-level reduction he would otherwise receive had the Guidelines been updated to reflect the First Step Act's amendments regarding safety-valve eligibility. In the event the Court grants a two-level downward variance from Khan's total offense level, his adjusted sentencing guideline range would be 87 – 108 months.

The United States also believes Khan's cooperation to date constitutes substantial assistance. To that end, the United States requests the Court to depart downward from the bottom of Khan's adjusted sentencing guideline range and sentence Khan to 65 months' imprisonment, which represents a departure of approximately 25%. The United States will advise the Court of the details of Khan's substantial assistance at his sentencing hearing.

Against this backdrop, and for the reasons that follow, the United States submits a sentence of 65 months' imprisonment, after taking into account the value of Khan's substantial assistance, is sufficient, but not greater than necessary, to reflect the nature and circumstances and seriousness of the instant offenses, the history and characteristics of the defendant, the need to promote respect for the law, provide just punishment, afford adequate specific and general deterrence, and protect the public from further crimes of the defendant.

## ANALYSIS

The overarching goal of a sentencing court is to fashion a sentence that is sufficient, but not greater than necessary, to accomplish the goals of sentencing. *Kimbrough v. United States*, 552 U.S. 85, 101 (2007). The sentencing court should begin the process by correctly calculating the applicable guideline range and must "remain cognizant of them throughout the sentencing

3

process." *Gall v. United States*, 552 U.S. 38, 50 n.6 (2007). Section 1B1.1 of the Sentencing Guidelines outlines, in express language, the order which district courts are to proceed. First, the district court calculates the applicable guideline range. U.S.S.G. § 1B1.1(a). Second, the district court applies any applicable departures under Sections H and K of Chapter 5. U.S.S.G. § 1B1.1(b). After the first two steps are complete, "the Court shall then consider the applicable factors in 18 U.S.C. § 3553(a) taken as a whole." U.S.S.G. § 1B1.1(c).

The Section 3553(a) factors are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocations training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established in the Guidelines;

(5) any pertinent policy statement by the Sentencing Commission;

(6) the need to avoid unwarranted disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims.

18 U.S.C. § 3553(a)(1)-(7).

### *Nature and Circumstances and Seriousness of the Offense*

On August 15, 2022, an undercover Port Saint Lucie Police Department ("PLSPD") officer purchased approximately 28 grams of methamphetamine (actual) from Khan for $620.00 during a controlled buy that took place inside Khan's vehicle in the parking lot of the Residence Inn located at 1920 SW Fountainview Blvd in Port Saint Lucie, Saint Lucie County, Florida. Lab results confirmed that the substance related to this controlled buy tested positive for 27.39 grams of methamphetamine with a purity level of 93%. (PSI at ¶ 8.)

On August 23, 2022, the same undercover officer purchased approximately 84 grams of methamphetamine (actual) from Khan for $1,650.00 during a controlled buy that took place inside Khan's vehicle in the parking lot of the Publix located at 9335 SW Commerce Centre Drive in Port Saint Lucie. Khan was driving the same vehicle from the previous controlled buy. Lab results confirmed that the substance related to this controlled buy tested positive for 84.4 grams of methamphetamine with a purity level of 93%. (PSI at ¶ 9.)

On September 7, 2022, the same undercover officer purchased approximately seven ounces of methamphetamine (actual) from Khan for $3,850.00 during a controlled buy that took place inside Khan's vehicle in the parking lot of the Residence Inn located at 1920 SW Fountainview Blvd in Port Saint Lucie. Khan was driving the same vehicle from the previous two controlled buys. Lab results confirmed that the substance related to this controlled buy tested positive for 195.2 grams of methamphetamine with a purity level of 93%. (PSI at ¶ 10.)

On September 21, 2022, DEA Special Agent Randy Matschner and PSLPD Detective Griffith interviewed Khan at the Martin County Jail. Prior to the interview, Detective Griffith advised Khan of his Miranda Rights and Khan agreed to speak with law enforcement. In sum, Khan admitted he sold methamphetamine to the undercover officer during the three controlled

buys charged in the Indictment.   Khan also identified his source of supply.   Khan advised that all of the methamphetamine he sold to the undercover officer came from the same source of supply. (PSI at ¶ 12.)

The nature and circumstances and seriousness of the instance offenses justify a sentence of 65 months' imprisonment, after taking into account the value of Khan's substantial assistance. Khan distributed a substantial amount of methamphetamine in the Southern District of Florida.[2] Methamphetamine is a dangerous and highly addictive drug that has had a pernicious impact on the five counties that comprise the Northern Region of the Southern District of Florida.   If there is ever any progress to be made stopping the unlawful distribution of controlled substances, those who traffic in them, such as Khan, must be held accountable for their actions.

### *History and Characteristics of the Defendant*

Khan's criminal history also merits attention as it reveals a disregard for the law and lack of respect for authority.   Khan has two recent felony drug convictions, including a drug trafficking conviction from 2019 (sale of methamphetamine).   (PSI at ¶¶ 40, 41.)   Khan was on probation for his drug trafficking conviction when he committed the instant offenses.   Khan was last released from jail in September 2019 – he committed the instant offenses in August and September of 2022.   (PSI at ¶ 40.)   The United States submits Khan's criminal history evinces an alarming level of recidivism and suggests he will continue to violate the law when not incarcerated.   Khan's prior periods of incarceration clearly were not sufficient enough to impress upon him the need to

---

[2] Khan is accountable for distributing more than ten ounces of methamphetamine (actual).  By way of comparison, an ordinary dose of methamphetamine for a typical user is one gram or less. *See* 28 C.F.R. 76.2(h)(6)(vii).

obey the law and conform his conduct to the requirements of society. The fact Khan, who is now 49 years old, continues to violate the law later in life is particularly disconcerting.

The United States does not dispute that Khan suffers from drug addiction. As this Court is well aware, drug addiction is unfortunately the rule, not the exception, for federal defendants. While Khan's voluntary drug abuse may have led to poor decision making, it in no way excuses his conduct. The Bureau of Prisons is well equipped to deal with drug addiction and mental health issues through various treatment programs, and the United States submits the defendant should avail himself of those opportunities.

### *The Need for the Sentence to Promote Respect for the Law, Provide Just Punishment for the Offense, Afford Adequate Specific and General Deterrence, and Protect the Public from Further Crimes of the Defendant*

Khan is a drug dealer who distributed large quantities of methamphetamine in the Southern District of Florida. The crimes Khan now stands convicted of are serious offenses. It is no secret that drug trafficking is an inherently dangerous activity. A sentence of 65 months' imprisonment, after taking into account the value of Khan's substantial assistance, is necessary to promote respect for the law, provide just punishment for the offense, afford adequate specific and general deterrence, and protect the public from further crimes of the defendant.

### *Parity in Sentencing*

Finally, Khan should expect to be treated like other similarly situated defendants. Parity in sentencing among similarly situated federal defendants across the country is fundamental to the proper administration of justice. This principle is embodied in Section 3553(a)(6), which "is concerned with national disparities among the many defendants with similar backgrounds convicted of similar criminal conduct." *United States v. Simmons*, 501 F.3d 620, 623 (6th Cir. 2007). Generally, "national uniformity is . . . taken into account by the Sentencing Guidelines,

which are almost certainly the best indication of ordinary practice since most sentences are within the guidelines." *Id*. at 626 (internal marks and citation omitted). Indeed, "[e]ven after *Booker* rendered the Sentencing Guidelines advisory, district courts have *in the vast majority of cases* imposed either within-Guidelines sentences or sentences that depart downward from the Guidelines on the Government's motion." *Hughes v. United States*, 138 S.Ct. 1765, 1777 (2018) (internal marks and citation omitted; emphasis added).

A sentence of 65 months' imprisonment adequately reflects the relevant 3553(a) factors, preserves the integrity of the Sentencing Guidelines, and promotes national uniformity.

By way of comparison, the United States offers the following cases for the Court's consideration, which involved safety-valve eligible defendants convicted of methamphetamine-related drug trafficking offenses. *See United States v. Donald Reid*, 21-CR-14019 (S.D. Fla.) (safety-valve eligible defendant sentenced to 90 months' imprisonment for possession with intent to distribute methamphetamine; defendant was accountable for 457.84 grams of methamphetamine (actual)); *United States v. Edwin Fernando Fernandez, Jr.*, 22-CR-14013 (S.D. Fla.) (safety-valve eligible defendant who received a substantial assistance departure sentenced to 56 months' imprisonment for conspiracy to distribute methamphetamine; defendant was accountable for distributing more than eight ounces of methamphetamine (actual)); *United States v. Ryon O'Neil Lewis*, 22-CR-14032 (S.D. Fla.) (safety-valve eligible defendant sentenced to 70 months' imprisonment for possession with intent to distribute methamphetamine; defendant was accountable for 212.79 grams of methamphetamine (actual)).

## CONCLUSION

Based on the foregoing, the United States respectfully requests the Court to depart downward from the bottom of Khan's guideline range to reflect his substantial assistance to the

United States, and sentence Khan to 65 months' imprisonment, which represents a departure of approximately 25% from the bottom of his adjusted guideline range.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By:   **/s/Michael D. Porter**
     Michael D. Porter
     Assistant United States Attorney
     Florida Bar# 0031149
     101 South U.S. Highway 1
     Suite 3100
     Fort Pierce, Florida 34950
     Telephone: (772) 293-0950
     Email:michael.porter2@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on March 29, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by either regular U.S. mail or inter-office delivery.

     **/s/Michael D. Porter**
     Michael D. Porter
     Assistant United States Attorney